UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JAMES and DEBRA SMITH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.:  3:10-CV-213 |
| | ) | (VARLAN/SHIRLEY) |
| ACCOUNTS RESEARCH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiffs, James and Debra Smith (referred to hereinafter as "Mr. Smith," "Mrs. Smith," and collectively as "plaintiffs"), brought this civil action against defendant, Accounts Research Inc., alleging violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692, *et seq*.  Pending before the Court is defendant's Motion for Summary Judgment as to All Claims [Doc. 11], in which defendant moves the Court for an order dismissing plaintiffs' claims on grounds that there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law.  Plaintiffs have submitted a response in opposition [Doc. 15], and defendant has submitted a reply [Doc. 21] to that response.

The Court has carefully considered the pending motion, the responsive pleadings, and the supporting exhibits in light of the relevant and controlling law.  For the reasons set forth herein, the Court finds the motion for summary judgment well-taken and it will be **GRANTED**.  Plaintiffs' claims will be **DISMISSED**, and this case will be **CLOSED**.

## I. Facts

Mr. Smith incurred a debt by failing to pay a bill for medical care he received from Westside Gastrointestinal Specialists ("Westside") [Doc. 11-3, pp. 2-3; Doc. 15-2]. On November 25, 2008, Westside placed Mr. Smith's account with defendant for collection (the "Smith Account") [Doc. 11-3, pp. 3-4; Doc. 15-2, p. 1]. At the time defendant received the Smith Account, the principal balance of Mr. Smith's bill was $71.60 [Doc. 11-3, pp. 3-4; Doc. 15-2, p. 1]. The contract with Westside that gave rise to the debt included a provision stating that in the event of a delinquency, the party liable for the debt agreed to pay interest charges, attorneys fees, and collection fees [Doc. 11-3, p. 6]. Mr. Smith testified that it was only his signature on the contract with Westside [Doc. 11-2; p. 3].

Defendant mailed a letter, directed to Mr. Smith and dated December 3, 2008 (the "December 3, 2008 notice letter"), giving the balance on the Smith Account as $108.48 [Doc. 1-1], and giving notice to Mr. Smith of his right to dispute the debt and seek verification [Doc. 11-2, p. 17]. Mrs. Smith testified that she saw the December 3, 2008 notice letter and agreed that it provided such notice [Doc. 11-1, pp. 11-12]. Plaintiffs did not submit a written dispute of the debt [Doc. 11-2, p. 17].

A year later, on December 11, 2009, defendant placed a phone call to Mrs. Smith via her cell phone [Doc. 15-2; Doc. 11-1, pp. 6-7]. Mrs. Smith received the call while she was at work [Doc. 11-1, p. 7]. Ms. Smith testified that Terry Gunner ("Mr. Gunner"), a representative of defendant, made the call [*Id.*]. Mrs. Smith testified that she told Mr. Gunner that "I really need to go. I'm not allowed to be on my cell phone at work." [*Id.*, pp.

7-8]. Mrs. Smith testified that Mr. Gunner told her she had "better make time" to discuss the debt and that if she would not make time, he would "make it in a court of law" [*Id.*, p. 8]. Mrs. Smith testified that Mr. Gunner threatened to come to her work, subpoena her, garnish her wages, and "really embarrass [her]." [*Id.*]. Ms. Smith testified that Mr. Gunner never actually showed up at her work [*Id.*]. Mrs. Smith received no other telephone calls from defendant or a representative of defendant [*Id.*, p. 10].

On July 7, 2009, defendant mailed a second letter, directed to Mrs. Smith, giving the balance on the Smith Account as $116.11 (the "July 7, 2009 letter") [Doc. 1-2]. The July 7, 2009 letter states, in pertinent part, that:

> We find it necessary to again call this obligation to your attention. You have ignored our previous requests for immediate settlement and we are certainly at a loss to understand why.
>
> You realize, of course, that there cannot be any letup in our efforts until you pay this bill. It is truly to your advantage to demonstrate your willingness to forward full payment today.

[*Id.*]. Sometime in the summer of 2009, Mr. Smith testified that he received one telephone call from defendant on the land line for his home [Doc. 11-2, pp. 5-15]. On December 14, 2009, defendant mailed a third letter, directed to Mrs. Smith, giving the balance on the Smith Account as $121.76 (the "December 14, 2009 letter") [Doc. 1-3]. On February 1, 2010, Mr. Smith testified that he received, on the land line for his home, a second telephone call from defendant during which Mr. Gunner told Mr. Smith that he was "lying" when Mr. Smith stated he would pay back the debt when he could get the money [Doc. 11-2, pp. 7-9]. Mr. Smith received no other calls from defendant or a representative of defendant [*Id.*, p. 14].

Mr. Smith testified that around February 2010, his son-in-law also received one call from defendant on the land line at plaintiffs' home [Doc. 11-2, pp. 11-12]. On February 3, 2010, defendant mailed a fourth letter (the "February 3, 2010 letter"), directed to Mr. Smith, giving the balance on the Smith Account as $123.56 and stating that "[t]he time has passed for payments, as your creditor and our client wants their money. The above amount is due in full NOW." [Doc. 1-4]

After these events, defendant's compliance administrator, Sharon Greer ("Ms. Greer"), testified that defendant received a cease and desist letter from plaintiffs [Doc. 11-3, p. 11]. After receipt of the letter, defendant informed Westside that the Smith Account needed to be forwarded to an attorney for collection [*Id.*, p. 12]. Westside authorized the forwarding of the Smith Account to an attorney, who, on March 30, 2010, filed a lawsuit against plaintiffs in state court [*Id.*, pp. 11-12]. The state court entered judgment against plaintiffs on the Smith Account [Doc. 11-1, pp. 2-4; Doc. 11-2, pp. 2-3].

Plaintiffs then initiated this lawsuit against defendant, alleging violations of §§ 1692c(a)(1), 1692d, 1692d(5), 1692e(4), 1692e(5), 1692e(10), and 1692g(a) of the FDCPA [Doc. 1]. Defendant filed the instant motion for summary judgment, asserting that there is no genuine issue of material fact with respect to any of plaintiffs' claims and defendant is entitled to summary judgment as to all claims. Plaintiffs filed a response in opposition, arguing that genuine issues of material fact exist and that summary judgment in favor of defendant for plaintiffs' claims under §§ 1692d, 1692e(4), 1692e(10), and 1692g(a) is inappropriate. Plaintiffs also assert that defendant violated § 1692 of the FDCPA, a claim

4

not raised in their complaint. Plaintiffs, however, provide no responsive argument in regard to their claims under §§ 1692c(a)(1), 1692d(5), or 1692e(5). In reply, defendant asserts that plaintiffs' response offers no issue of disputed material fact and no reason why summary judgment should not be granted to defendant on all plaintiffs' claims.

## II.     Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

5

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter, *id.* at 249, nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

Congress enacted the FDCPA to eliminate "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). *See Barany-Snyder v. Weiner*, 539 F.3d 327, 332 -333 (6th Cir. 2008). When interpreting the FDCPA, courts begin with the language of the statute itself." *Schroyer v. Frankel*, 197 F.3d 1170, 1174 (6th Cir.1999). As the United States Court of Appeals for the Sixth Circuit has noted, the FDCPA is "extraordinarily broad," crafted in response to what Congress perceived to be a widespread problem. *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir.1992). Courts therefore use the "least sophisticated consumer" standard, an objective test, when assessing whether particular conduct violates the FDCPA. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir.2006). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433,

6

438 (6th Cir.2008) (quotation marks and citations omitted). "[A]lthough this standard protects naive consumers, it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.* at 438-39 (quotation marks and citations omitted).

Plaintiffs claim that defendant violated a number of FDCPA provisions. Defendant asserts that it is entitled to summary judgment in regard to all plaintiffs' claims. The Court addresses each in turn.

### A.  15 U.S.C. § 1692c(a)(1)[1]

Plaintiffs allege that defendant communicated with them at plaintiffs' place of employment, a place defendant knew to be inconvenient, by repeatedly contacting plaintiffs despite their indication that they were unable to receive personal calls at work, in violation of § 1692c(a)(1) of the FDCPA [Doc. 1, ¶¶ 16, 32(a)]. Section 1692c(a)(1) prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "at any unusual time or place known or which should be known to be inconvenient to the consumer." 15 U.S.C. § 1692c(a)(1).

It is undisputed that Mrs. Smith received only one call from defendant, via her cell phone, while she was at work [Doc. 11-1, pp. 6-7]. Mrs. Smith testified that she received no other calls from defendant, or an agent of defendant, either at work, home, or on her cell

---

[1] Plaintiffs have submitted no argument in support of this claim in their response to defendant's motion for summary judgment.

phone [*Id.*, p. 10].  Mr. Smith testified that he never received a call from defendant while he was at work or on his cell phone [Doc. 11-1, pp. 5-15].  According to Mr. Smith's testimony, he received two calls from defendant on the land line at his home, one in the summer of 2009, and one in February 2010 [*Id.*].

The Court finds this undisputed evidence does not show defendant repeatedly communicated or attempted to communicate with plaintiffs at their work because there is no evidence that defendant, or defendant's agent, repeatedly contacted either plaintiff at their places of employment.  Thus, defendant is entitled to summary judgment.

### B.      15 U.S.C. § 1692d

Plaintiffs next allege that defendant violated § 1692d of the FDCPA, generally, by engaging in harassing, oppressive, or abusive conduct in connection with the collection of a debt and through Mr. Gunner's statements to Mrs. Smith that her wages would be garnished, that a legal action would be taken and that defendant would not "letup" in its collective efforts, and Mr. Gunner's statement to Mr. Smith that he was lying.

Section 1692d provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress or abuse, including "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  15 U.S.C. § 1692d(5).  To prevail under § 1692d, the plaintiff must show not only that the contents of the calls were harassing, abusive, or misleading, but must also establish the callers' intent.  *See Martin v. Select Portfolio Serving Holding Corp.*, No. 1:05-cv-273, 2008 WL 618788, at *6 (S.D. Ohio

8

Mar. 3, 2008); *Juras v. Aman Collection Serv., Inc.*, 829 F.2d 739, 741(9th Cir.1987), *cert. denied*, 488 U.S. 875 (1988). A debt collector may, however, violate § 1692d(5) when its employee adopts an intimidating posture in telephone conversations, or immediately calls back after hanging up. *See Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir.1994); *Lovelace v. Stephens & Michaels Associates, Inc.*, NO. 07-10956, 2007 WL 3333019, at *7 (E.D. Mich. Nov.9, 2007). In determining whether the debt collector intended to annoy, abuse and harass the consumer, the Court may consider frequency, persistence, and volume of the telephone calls. *See Lovelace*, 2007 WL 3333019, at *7; *Sanchez v. Client Servs., Inc.*, 520 F. Supp. 2d 1149, 1161 (N.D. Cal.2007).

First, in regard to plaintiffs' allegations concerning Mr. Gunner's statements regarding garnishment and a legal action, the Court concludes that under the circumstances of this case, this conduct does not constitute a violation of § 1692d. Ms. Greer testified, and plaintiffs have submitted no evidence to the contrary, that after the Smith Account was placed with defendant, defendant investigated plaintiffs' assets to determine the possibility of seeking a garnishment or other legal action in connection with the debt [Doc. 11-3, pp. 9-10]. It is also undisputed that after defendant informed Westside of plaintiffs' cease and desist letter, Westside brought a lawsuit against plaintiffs and ultimately obtained a judgment [*Id.*, pp. 11-12; Doc. 11-1, pp. 2-4; Doc. 11-2, pp. 2-3]. Thus, because it is undisputed that defendant and Westside took steps to determine if a garnishment action was appropriate and filed suit against plaintiffs, including obtaining a judgment, plaintiffs' argument that Mr. Gunner made

statements regarding garnishment and a legal action, on one occasion, does not demonstrate repetitive, continuous, or harassing conduct, or an intent to harass, oppress, or abuse.

Second, in regard to plaintiffs' allegations that Mr. Gunner called Mr. Smith a "liar," the Court concludes that this statement, which the Court views in the light most favorable to plaintiffs, and even if viewed as inappropriate, nonetheless does not demonstrate harassing, abusive, or oppressive conduct in connection with a debt. Plaintiffs cite several cases which they assert stand for the proposition that debt collectors are liable for § 1692d violations when they refer to consumers as "liars," or call into doubt the consumer's character and honesty [Doc. 15-1, pp. 7-9 (citing *Chiverton v. Fed. Fin. Group, Inc.*, 399 F. Supp. 2d 96 (D. Conn. 2006) and *Moore v. Firstsource Advantage*, No. 07-CV-770, 2011 WL 4345703 (W.D. N.Y. Sept. 15, 2011))]. The facts of *Chiverton* and *Moore*, however, are distinguishable from the facts of this case.

In *Chiverton*, the district court held that the defendant-collector violated § 1692d(2) by making repeated calls to the plaintiff-consumer after the plaintiff hung up repeatedly on the defendant, asked the defendant to stop calling, and after the plaintiff told the defendant's agent that he had supplied the defendant with proof that his debt had been paid, to which the agent responded by calling the plaintiff a "liar." *Id.*, 399 F. Supp. 2d at 99, 103-104. Thus, in *Chiverton*, the defendant knew there was no need to communicate with the plaintiff because the defendant had notice that the debt had been paid. In this case, there is no such evidence. In addition, in *Chiverton*, there was evidence of repeated phone calls by the defendant to the plaintiff, and evidence that the plaintiff repeatedly hung up on the defendant.

10

*Id.* at 99-100. In this case, there is evidence of only four, non-repetitive phone calls, only three of which were received by plaintiffs, and only one of which involved the accusation of lying.

In *Moore*, in addition to the plaintiff-consumer's allegation that the defendant-collector mocked her and called her a liar, the district court found a genuine issue of fact as to the volume, frequency, pattern, and substance of the defendant's communications with the plaintiff. *Id.*, 2011 WL 4345703, at *14-*15.[2] In particular, the *Moore* court referenced evidence that when the plaintiff answered a call from the defendant, the agent would begin singing "Mama Mia" and then hang up. *Id.* In this case, there is no evidence that defendant repeatedly called plaintiffs, no evidence that plaintiffs repeatedly hung up on defendant, and no evidence that an agent of defendant called plaintiffs, sang or behaved in a similarly inappropriate manner, and hung up. Rather, the evidence shows that defendant made, at the most, four phone calls to plaintiffs, and plaintiffs have alleged only one conversation between Mr. Smith and Mr. Gunner in which the accusation of "lying" was made.

Third, in regard to plaintiffs' argument regarding the statement in the July 7, 2009 letter that "[y]ou realize, of course, that there cannot be any letup in our efforts until you pay this bill[,]" the Court does not find this to demonstrate an intent to harass and abuse plaintiffs [Doc. 1-3; Doc. 15-1, p. 7]. While plaintiffs cite several cases which involve collection

---

[2]The *Moore* court noted that the record was not clear as to how many calls the defendant had placed to the plaintiff, noting the plaintiff's estimate that 90 prerecorded phone calls were made, while the defendant argued that it had made only a maximum of 58 calls. *Id.*, 2011 WL 4345703, at *14. Either way, these numbers far exceed the number of phone calls alleged by plaintiffs in this case.

letters threatening legal action, the Court finds these cases distinguishable [Doc. 15-1, pp. 8-9 (citing *Henderson v. Credit Bureau of Lockport, Inc.*, No. Civ-87-123E, 1989 WL 78235 (W.D. N.Y. July 14, 1989) and *Rutnya v. Collection Accounts Terminal, Inc.*, 478 F. Supp. 980 (N.D. Ill. 1979))].

In *Henderson*, the district court noted that the defendant- collector had previously sent several "48-hour notices" to the plaintiff-consumers and that the handwritten words "NO MORE FALSE PROMISES" appeared on one of the later notices. *Id.*, 1989 WL 78235, at *2-*3. The *Henderson* court stated that "[t]he only function of [the defendant's] words were to vent his personal frustration concerning a debtor's elusiveness, and to compel payment by harassment." *Id.* at *3. The *Henderson* court also found that the notices violated other requirements of the FDCPA because the notices implied that the plaintiffs' employers might be contacted, did not distinguish between different debts owed by the plaintiffs, and did not include notice to the plaintiffs that a debt would be assumed valid if the plaintiffs did not dispute the debt in writing. *Id.* at *2-*3. Here, there are no similar facts indicating that either plaintiff previously promised to pay the Smith Account before the July 7, 2009 letter was sent,[3] that the letters sent by defendant were not similarly in violation of the FDCPA as the notices in *Henderson*, or that plaintiffs were elusive regarding payment of the Smith Account. While defendant's typed statement in the February 3, 2010 letter that the debt is "due in full NOW" [Doc. 1-4] is somewhat similar to the handwritten statement in

---

[3]The Court notes that Mr. Gunner's statement that Mr. Smith was "lying" came in February 2010, after the July 7, 2009 letter.

*Henderson*, the Court does not find that this one statement demonstrates defendant's or Mr. Gunner's intent to be intimidating, harassing, abusive, or misleading towards plaintiff.

In *Rutyna*, the plaintiff-consumer incurred a debt for medical services and erroneously believed that her insurance had paid the debt in full. *Id.*, 478 F. Supp. at 981. An agent of the defendant called the plaintiff and when she denied that she owed the debt, the agent responded that "you owe it, you don't want to pay, so we're going to have to do something about it." *Id.* The defendant then sent a letter to the plaintiff stating that the defendant's "field investigator has been instructed to make an investigation in your neighborhood and to personally call your employer. The immediate payment of the full amount, or a personal visit to this office, will spare you this embarrassment." *Id.* The *Rutyna* court found the tone in the letter to be one of "intimidation, and . . . intended as such in order to effect a collection. The threat of an investigation and resulting embarrassment to the alleged debtor is clear[.]" *Id.* at 982.

The "NOW" statement referenced by plaintiffs does not rise to the level of the statements made in *Henderson* or *Rutyna*. It is not accompanied with a threat to do something about plaintiffs' nonpayment, nor does the letter threaten to make personal contact with plaintiffs' employers. In addition, there is no evidence that plaintiffs told defendant they had paid the debt. In sum, viewing the statements and all inferences in the light most favorable to plaintiffs, they have not submitted sufficient evidence that defendant had the intent to harass, oppress, or abuse plaintiffs into paying the Smith Account. Accordingly, defendant is entitled to summary judgment.

13

## C.  15 U.S.C. § 1692d(5)[4]

Plaintiffs next allege that defendant caused their telephone to ring repeatedly or continuously with the intent to annoy, abuse, or harass them, in violation of § 1692d(5) of the FDCPA.  Section 1692d(5) prohibits a debt collector from "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass." 15 U.S.C. § 1692d(5).  *Id.*; *see Hicks v. America's Recovery Solutions, LLC*, — F. Supp. 2d —, —, No. 1:09 CV 2650, 2011 WL 4540755, at *6 (N.D. Ohio Sept. 29, 2011).  District courts have followed the Federal Trade Commission's interpretations, finding that the term "repeatedly" means "calling with excessive frequency under the circumstances," and that "continuously" means "making a series of calls, one right after the other." *Hicks*, 2011 WL 4540755, at *6; *McVey v. Bay Area Credit Serv,*, No. 4:10–CV–359–A, 2010 WL 2927388, at *6 (N.D. Tex. July 26, 2010) (citing *Federal Trade Comm'n Staff Commentary on the Fair Debt Collection Practices Act*, Fed. Reg. 50097). Although a court may consider the "frequency, persistence, and volume of the telephone calls" to determine intent, the mere fact that a call is unwelcome is "insufficient to constitute a violation of the FDCPA." *Martin*, 2008 WL 618788, at *6.  Furthermore, a significant disparity between the number of telephone calls placed by the defendant and answered by the plaintiff may suggest difficulty in reaching the plaintiff rather than intent. *See Saltzman v. I.C. Sys., Inc.*, No. 09–10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009).

---

[4]Plaintiffs have submitted no argument in support of this claim in their response to defendant's motion for summary judgment.

14

According to Mrs. Smith's testimony, she received only one call from defendant on her cell phone and received no calls at work or at home [Doc. 11-1, p. 10]. According to Mr. Smith's testimony, he received two calls from defendant on his land line at home, received no calls on his cell phone or at work, and his son-in-law received one call at plaintiffs' home [Doc. 11-2, pp. 13-15]. Thus, plaintiffs have identified a total of four telephone calls that defendant placed to plaintiffs' cell and home phones, most of which were separated by several months. The Court does not find these calls to constitute calls made on a continuous basis, one right after the other, or with excessive frequency under the circumstances. In addition, the Court notes that the mere fact that a call or letter is unwelcome is not a violation of the FDCPA. Accordingly, defendant is entitled to summary judgment.

### D.    15 U.S.C. §§ 1692e(4), (5), and (10)

In their complaint, plaintiffs also allege that defendant, through Mr. Gunner, represented or implied to Mrs. Smith that nonpayment of the Smith Account would result in seizure or garnishment of plaintiffs' property or wages, in violation of § 1692e(4), and that defendant threatened to take legal action that cannot legally be taken, in violation of § 1692e(5). Plaintiffs also allege that defendant made false representations or used deceptive means to attempt to collect or obtain information concerning plaintiffs, in violation of § 1692e(10). Specifically, plaintiffs allege that the four letters sent by defendant were "inconsistent" and contained "different amounts due in each letter with no explanation why the amount increased or changed." [Doc. 1, ¶ 21]. Defendant has requested summary

judgment in regard to all these claims. In their response, plaintiffs do not provide any argument in regard to their claims under §§ 1692e(5) and (10).

Section 1692e of the FDCPA generally prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e(4) prohibits:

> The representation or implication that nonpayment of any debt will result in . . . the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

15 U.S.C.A. § 1692e(4). Section 1692e(5) proscribes "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," and § 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt[.]" 15 U.S.C. § 1692e(5), (10).

## 1.    15 U.S.C. § 1692e(4)

As to the alleged violation of § 1692e(4) of the FDCPA, defendant asserts that after receiving the Smith Account, defendant undertook investigations into plaintiffs' employment and the extent of their assets to determine plaintiffs' capability of paying the debt and to verify appropriate contact information [Doc. 11-3, pp. 9-10]. Ms. Greer testified that this investigation was part of defendant's standard procedure [*Id.*]. As a result of its investigations, defendant asserts that after plaintiffs failed to pay the debt, Westside decided to pursue legal action against plaintiffs by filing suit. Thus, defendant points out, a legal action *was* pursued against plaintiffs and a judgment against plaintiffs was in fact entered.

16

Accordingly, defendant asserts that Mr. Gunner's statements regarding wage or property garnishment and seizure were not a violation of § 1692e(4) because defendant did in fact take steps to determine the feasibility of those actions.

In response, plaintiffs argue that because defendant's investigation into whether they had the ability to pay the debt was "standard procedure," defendant cannot show that it made the statements regarding garnishment and legal action with the requisite level of intent to overcome, on summary judgment, plaintiffs' claim under § 1692e(4) because Mr. Gunner's statements to Mrs. Smith constitute a representation or implication to take actions which defendant did not intend to take. The Court disagrees. The fact that defendant followed a standard procedure in verifying plaintiffs' assets and employment for purposes of determining whether they would be able to pay the underlying debt, even if such actions were not ultimately pursued, does not demonstrate a lack of intent to pursue such actions if feasible, or that defendant represented or implied that it would take actions it never intended to take. Under plaintiffs' argument, the only way a debt collector could show intent to pursue a garnishment or a seizure so as not to violate § 1692e(4) is by actually pursuing the garnishment or seizure. The Court finds this argument untenable and does not find that Mr. Gunner's statement concerning a garnishment or legal action, coupled with defendant's investigation into the feasibility of pursuing such actions, to violate § 1692e(4). Because plaintiffs have pointed to no other evidence that would constitute a violation of § 1692e(4), the Court finds that defendant is entitled to summary judgment.

### 2.  15 U.S.C. § 1692e(5)[5]

As to the alleged violation of § 1692e(5) of the FDCPA, defendant asserts that assuming Mr. Gunner told Mrs. Smith she would have to discuss the debt in a court of law and that "court papers" would be filed if plaintiffs did not pay the debt, because Westside actually filed suit against plaintiffs, there is no evidence of a threat of a legal action that could not be pursued and no evidence that these statements were made without intent to take such actions. The Court agrees with defendant for the same reasons given above in regard to the Court's analysis of plaintiff's claim for a violation of § 1692e(5). Accordingly, defendant is entitled to summary judgment in regard to this claim as well.

### 3.  15 § U.S.C. 1692e(10)[6]

As to plaintiffs' claim under § 1692e(10) of the FDCPA, defendant asserts that plaintiffs acknowledged receipt of the December 3, 2008 notice letter and acknowledged that the letter gave notice regarding the right to dispute the debt and seek verification, yet plaintiffs never submitted a written dispute [Doc. 11-2, p. 17]. Defendant also points out that plaintiffs have not disputed that they owed the original balance of $71.60 on the Smith Account [*Id.*]. Rather, plaintiffs' claims are based on their submission that they do not "understand how additional amounts were being added to [that amount.]" [*Id.*]. Defendant points out, however, that Mr. Smith testified that his signature was on the contract with

---

[5]Plaintiffs have submitted no argument in support of this claim in their response to defendant's motion for summary judgment.

[6]Plaintiffs have submitted no argument in support of this claim in their response to defendant's motion for summary judgment.

18

Westside that gave rise to the debt and in that contract, he agreed to pay interest charges, attorney's fees and collection costs in the event of a delinquency [*Id.*, pp. 3-4; Doc. 11-1, p. 5].[7] Furthermore, the Court notes that plaintiffs have submitted no law stating that a debt collector is required to inform a consumer, by a notice letter or otherwise, that a debt has increased or may increase due to added interest or attorneys fees allowable under the underlying contract. Accordingly, given the above-referenced testimony, and having no other evidence that plaintiffs were misled by defendant's letters, or that a least sophisticated consumer would be misled by such letters, the Court finds that defendant is entitled to summary judgment.

### E.     15 U.S.C. § 1692g(a)

Plaintiffs submit that the December 3, 2008 notice letter was addressed solely to Mr. Smith, and not Mrs. Smith, and therefore defendant violated § 1692g(a) of the FDCPA because it failed to notify Mrs. Smith of her right to dispute the debt within five days of contacting her via her cell phone, on December 11, 2009. Plaintiffs assert that because defendant independently sought collection of the debt from Mrs. Smith, defendant should also have provided written notice to her pursuant to § 1692g(a). Defendant contends that Mr. Smith was the only "consumer" requiring notice of the debt for purposes of § 1692g(a), and

---

[7]Plaintiffs also submit that they were never given a copy of the underlying contract with Westside, yet they acknowledge that they never asked for a copy of that contract prior to the state court lawsuit [Doc. 11-1, p. 5; Doc. 11-2, p. 4].

submits that the undisputed evidence shows that Mr. Smith was provided with the required notice of the debt.

Section 1692g(a) requires debt collection agencies to provide written notice to consumers that discloses, among other things, the name of the creditor and the amount owed. 15 U.S.C. § 1692g(a). *See Millsap v. CCB Credit Servs., Inc.*, No. 07-11915, 2008 WL 8511691, at *4 (E.D. Mich. Sept. 20, 2008). By definition, a consumer is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Specifically, § 1692g(a) provides that:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the

20

consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). Courts have observed that this provision "requires only that a Notice be 'sent' by a debt collector," and a collector need not "establish actual receipt by the debtor" to satisfy the statutory requirement of notice. *Mahon v. Credit Bureau of Placer Cnty. Inc*, 171 F.3d 1197, 1201 (9th Cir.1999); *see also Crain v. Pinnacle Fin. Group, Inc.*, No. 07-12075, 2007 WL 3408540, at *3 (E.D. Mich. Nov.14, 2007) ("Denial of receipt . . . is irrelevant for purposes of the FDCPA."); *Zamos v. Asset Acceptance, LLC*, 423 F. Supp. 2d 777, 785-86 (N.D. Ohio 2006) (same). Once the initial notice is sent, the debtor is given a 30-day opportunity to dispute the validity of the debt in writing, and such a written objection requires the debt collector to suspend its collection efforts until it produces verification of the debt. *See* 15 U.S.C. § 1692g(b). If the debtor does not dispute the debt within the 30-day period, however, the debt is presumed to be valid and verification is not required from the debt collector. *See* 15 U.S.C. § 1692(a)(3); *see also Mahon*, 171 F.3d at 1202-03; *Crain*, 2007 WL 3408540, at *4. Standing in an action against a debt collector under § 1692g is limited to the consumer involved in the debt transaction. *See, e.g.*, *Montgomery v. Huntington Bank*, 346 F.3d 693, 697 (6th Cir. 2003) (explaining that the provisions of the FDCPA that are limited to consumers, as opposed to the provisions applicable to any person, restrict standing to consumers); *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 649 n.1 (6th Cir. 1994) (en banc) (stating that where the section forbids actions by creditors against consumers, enforcement of the violations is limited to consumers). The FDCPA defines the

term "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

In the instant case, plaintiffs have acknowledged receipt of the December 3, 2008 notice letter and have acknowledged that this letter contained information regarding Mr. Smith's right to dispute the debt and seek verification [Doc. 1-1; Doc. 11-1, pp. 11-12]. In its motion for summary judgment, defendant has submitted Ms. Greer's testimony that Mr. Smith, as the patient, was the party obligated to pay the underlying debt [Doc. 11-1, pp. 2-3], and Mr. Smith testified that it was only his signature on the contract with Westside that gave rise to the underlying debt [Doc. 11-2, p. 3]. While plaintiffs allege in the complaint that both Mr. Smith and Mrs. Smith are "consumers" for purposes of their FDCPA claims, plaintiffs have not presented any evidence in their response to defendant's motion that both Mr. Smith and Mrs. Smith are consumers for purposes of § 1692(g), that is, that both Mr. and Mrs. Smith were involved in the underlying debt transaction with Westside.[8] Thus, plaintiffs have not offered evidence to contradict the evidence that Mr. Smith was the only party obligated to pay the underlying debt and the only "consumer" for purposes of § 1692g(a). Thus, the Court finds defendant is entitled to summary judgment in regard to this claim.

---

[8]Mrs. Smith testified that she was the one who handled bill payment in plaintiffs' home, and that she had seen the December 3, 2008 notice letter [Doc. 11-1, p. 12]. There is no testimony or evidence in the record, however, that Mrs. Smith was legally responsible or obligated to pay the debt underlying the Smith Account.

**F.    15 U.S.C. § 1692f(1)**

In response to defendant's motion for summary judgment, plaintiffs for the first time assert a violation of § 1692f of the FDCPA, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," and prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Defendant objects to this claim on grounds that it is improper to raise a new legal argument at the summary judgment stage.

The Sixth Circuit considered a similar issue in *Tucker v. Union of Needltracks, Indus. & Textile Employees*, 407 F.3d 784 (6th Cir. 2005). In *Tucker*, the plaintiff argued that the district court erred in failing to consider a claim for promissory estoppel which she had not raised until her response to the defendant's motion for summary judgment. *Id.*, 407 F.3d at 788. The Sixth Circuit held that the claim had been properly rejected since, although the facts necessary to plead her omitted claim were within the plaintiff's knowledge, she had failed to timely amend her complaint when she learned of those facts. *Id.* at 789. In doing so, the court of appeals stated that," to permit a plaintiff to [assert a new claim at the summary judgment stage] would subject defendants to unfair surprise." *Id.* at 788.

In this case, plaintiffs were clearly aware of the facts from which they have based their claim under § 1692f. This case has been pending since May 10, 2009, and, as shown by plaintiffs' other allegations and claims, plaintiffs possessed the letters sent by defendant containing the statements which form the basis of plaintiffs' new claim, along with plaintiffs'

23

other claims, and thus, plaintiffs and counsel for plaintiffs were clearly aware of these facts. Plaintiffs never sought to amend their complaint to add a claim under § 1629f, and the time for amendments to pleadings has expired. Rather, plaintiffs waited until their response to defendant's summary judgment motion, filed approximately three months prior to the trial date, to assert this claim. On this alone, the Court could decline to consider plaintiffs' claim under § 1692f.

However, for purposes of completeness, the Court has considered plaintiffs' § 1692f claim and finds that defendant is entitled to summary judgment in regard to this claim as well. Plaintiffs assert the same allegations raised in regard to their other claims, each of which the Court has determined do not involve genuine issues of material fact and that defendant is entitled to judgment as a matter of law. That is, allegations that defendant acted in an unfair and unconscionable manner when Mr. Gunner called Mr. Smith a liar and when defendant set forth "varying amounts in its written correspondence, and failed to provide plaintiff with any explanation for the increases." As the Court found above, a single instance of Mr. Gunner telling Mr. Smith he was lying when Mr. Smith stated that he was going to pay the debt does not demonstrate harassing, abusive, or oppressive conduct when there is no other evidence that defendant or its agent made this statement continuously or repeatedly or with an intent to harass or abuse plaintiffs. Furthermore, plaintiffs have failed to address defendant's argument that the differing amounts in the letters mailed to plaintiffs were authorized by the underlying contract with Westside creating the debt, and the Court has been presented with no law stating that the FDCPA requires a debt collector to explain why

24

a consumer's debt has increased due to added interest or attorneys fees allowable by the underlying contract.

## IV.    Conclusion

For the reasons set forth herein, defendant's Motion for Summary Judgment as to All Claims [Doc. 11] will be **GRANTED** and plaintiffs' claims against defendant will be **DISMISSED**.  The Clerk will be **DIRECTED** to close this case.  An appropriate order will be entered.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE